NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2072-14T2
            A-2495-14T2

MELODY FAITH MAZUR, as ATTORNEY-
IN-FACT for DORIS ELIZABETH
ARMSTRONG,

     Plaintiff-Appellant,

v.

CRANE'S MILL NURSING HOME, CRANE'S
MILL OAK HEALTH CENTER, THE OAKS AT
CRANE'S MILL, THE HEALTH CENTER AT
CRANE'S MILL, LUTHERAN SOCIAL
MINISTRIES OF NJ, and PRADIP SUKHAL
SHAH, M.D.,

     Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 11, 2015**
>
> **APPELLATE DIVISION**

Submitted June 2, 2015 — Decided June 11, 2015

Before Judges Fisher, Nugent and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. L-
2703-14.

Failla & Banks, LLC, attorneys for appellant
(Vincent J. Failla, on the briefs).

Vasios, Kelly & Strollo, P.A., attorneys for
respondent Pradip Sukhal Shah, M.D. (Rowena
M. Duran, of counsel; Linda Fulop-Slaughter,
on the brief).

Burns White LLC, attorneys for respondents
Lutheran Social Ministries at Crane's Mill,
Inc. (incorrectly pleaded as "Crane's Mill

Nursing Home") and Lutheran Social Ministries of New Jersey, Inc. (Brian D. Pagano and Taisha K. Tolliver, on the brief).

PER CURIAM

This is a medical malpractice action. Plaintiff has filed these appeals, which we consolidate for purposes of this opinion, from trial court orders dismissing the complaint on the ground that the affidavit of merit plaintiff served on defendants was deficient. Because the trial court based its disposition of defendant Pradip Sukhal Shah's motion on false statements in his answer, his attorney's certification, and his brief, as well as incompetent evidence, we reverse and remand for further proceedings. We also reverse the order dismissing the complaint against defendants Lutheran Social Ministries at Crane's Mill, Inc., and Lutheran Social Ministries of New Jersey, Inc., (collectively, LSM), which owned and operated the facility where the malpractice allegedly occurred. The arguments of the LSM defendants are essentially the same as Dr. Shah's and are based on either incompetent evidence on the motion record or unsupported statements in their brief. We remand this case to the trial court for further proceedings consistent with this opinion.

The facts of record are essentially undisputed. Plaintiff Melody Mazur is the attorney-in-fact for her mother, Doris Elizabeth Armstrong.[1]  Doris Elizabeth Armstrong (the patient) was eighty-one years old when she was admitted to the LSM facility in November 2012 to undergo rehabilitation following her hospitalization for a fractured pelvis.  According to an LSM attorney's certification - which will be discussed later - the LSM facility was a "full-service assisted living, skilled nursing and rehabilitation facility equipped to provide the rehabilitative needs that [the patient] required."  During her stay at the LSM facility, the patient suffered a severe stroke, the event that precipitated this lawsuit.

Plaintiff filed a five-count complaint against Dr. Shah, LSM, and numerous fictitiously named defendants on April 17, 2014,[2] and an affidavit of merit on May 7, 2014.  Although the complaint alleged causes of action for negligence, malpractice, negligent hiring, negligent supervision, and negligent training,

---

[1] Ms. Armstrong is now deceased.  Plaintiff will presumably amend the complaint, substitute an appropriate representative, see N.J.S.A. 2A:15-3, N.J.S.A. 2A:31-2, and properly identify the defendants.

[2] The complaint is date stamped with the year 2015, but bears a 2014 docket number, and the other pleadings as well as the transcripts make it clear that the complaint was filed in 2014.

the core allegation was that defendants' untimely diagnosis and treatment of the patient's stroke fell outside acceptable professional standards of care and caused the patient to suffer debilitating injuries. For example, the negligent hiring count incorporates the allegations as to Dr. Shah and then asserts the LSM defendants were negligent for hiring him because they knew or should have known he was not qualified to fill the position for which he was hired. The only factual allegations supporting that proposition are those that Dr. Shah deviated from an accepted medical standard when caring for the patient. Significantly, plaintiff alleged that Dr. Shah and the other medical providers who cared for the patient were agents or employees of LSM.

Plaintiff's affidavit of merit (AOM), prepared by Dr. Ira Mehlman, stated that the patient's care at the LSM facility on November 23, 2012, "did not meet the standard of care." In the doctor's opinion, the clinical nursing team's and Dr. Shah's alleged deviations from professional standards of care caused or contributed to the patient's final debilitating condition. Dr. Mehlman was board certified in emergency and internal medicine.

The month after plaintiff filed the complaint, Dr. Shah filed an answer on May 15, 2014, which included this statement: "Dr. Shah's field of specialty is [g]eriatrics [m]edicine and he

is [b]oard [c]ertified in [g]eriatrics. The doctor's treatment of the plaintiff involved the specialty of [g]eriatrics." The statement that Dr. Shah was board certified was false; although Dr. Shah had once been board certified in geriatric medicine, he had not been so certified for several years or more before he began to treat the patient at the LSM facility.

On July 2, 2014, the trial court sent a letter to plaintiff's counsel scheduling a <u>Ferreira</u>[3] conference for October 16, 2014 and directing plaintiff's counsel to notify the other parties. The conference was thus to occur more than 120 days after Dr. Shah filed his answer on May 15, 2004. Meanwhile, LSM had filed an answer on June 19, 2014. The <u>Ferreira</u> conference was scheduled to be conducted 119 days after the LSM answer was filed; however, eight days before the conference, counsel for LSM obtained a consensual adjournment to October 29, 2014, 132 days after LSM filed its answer.

A month before the <u>Ferreira</u> conference occurred, Dr. Shah's counsel sent a letter to plaintiff's counsel pointing out that Dr. Ira Mehlman, in the AOM,

> certifies that he is boarded in [e]mergency [m]edicine and [i]nternal [m]edicine but has been practicing [e]mergency [m]edicine since 1992. Dr. Shah was treating [the patient]

---

[3] <u>Ferreira v. Rancocas Orthopedic Assoc.</u>, 178 <u>N.J.</u> 144 (2003).

> as a board certified geriatric specialist. Accordingly, it is our position that both pursuant to the case law and the statute, Dr. Mehlman is not qualified to render an affidavit of merit as to Dr. Shah. Accordingly, we will not be withdrawing our motion to dismiss.[4]

Counsel's assertion that Dr. Shah was "treating [the patient] as a board certified geriatric specialist" was false.

By the time the <u>Ferreira</u> conference was conducted on October 29, 2014, Dr. Shah had filed a second motion to dismiss, returnable November 7, 2014. When informed by counsel of the pending motion, the court responded: "Okay. There's nothing for me to do then because I'll decide that on the [return date of Dr. Shah's motion]." The court made no determination at the <u>Ferreira</u> conference as to whether plaintiff's affidavit of merit was deficient.

On November 7, 2014, the court heard oral argument on Dr. Shah's motion to dismiss. Plaintiff's counsel did not appear. Dr. Shah's motion was supported by a certification of counsel, exhibit, and brief. The certification and brief repeated the false assertion that Dr. Shah was board certified in geriatric medicine. The "exhibit" was a printout of a New Jersey Health

---

[4] Dr. Shah's counsel had filed a motion to dismiss on the ground that plaintiff had filed no affidavit of merit. That motion, denied without prejudice on October 10, 2014, is not at issue here.

Care Profile from an internet site stating that Dr. Shah's board certification in internal medicine expired on December 31, 2006 and his board certification in geriatric medicine expired on December 31, 2008. The court and counsel apparently overlooked those dates.

The court noted that Dr. Shah's "motion is indicating that [plaintiff's AOM] doesn't comply inasmuch [as plaintiff's] expert . . . is not board certified in geriatrics, or geriatric medicine." Citing precedent requiring that the AOM author be board certified in the same specialty as the defendant being criticized, the court granted Dr. Shah's motion and dismissed the complaint as to him with prejudice. On leave granted, plaintiff appealed under A-2072-14 from the confirming order.

The following month, December 2014, the LSM defendants filed a motion to dismiss the complaint. In support of the motion, counsel for the LSM defendants submitted a certification that the LSM facility was a "full-service assisted living, skilled nursing and rehabilitation facility equipped to provide the rehabilitative needs that [the patient] required." Citing the allegation in plaintiff's complaint that defendants "failed to adhere to accepted medical and/or nursing standards," and referencing the court's dismissal with prejudice of the complaint against Dr. Shah, the LSM defendants sought a

dismissal with prejudice "for the same reason," namely, plaintiff's AOM "is insufficient in that it was not served by a properly qualified affiant."

During oral argument, plaintiff's counsel clarified that plaintiff was alleging the LSM defendants were negligent in "react[ing] to an emergency situation, a person . . . a person having a stroke in their facility." The court rejected plaintiff's argument that Dr. Mehlman's AOM was adequate. The court stated: "I [am] rejecting your witness because, when you're suing the nursing home for malpractice and their policies and procedures, this witness has no experience to talk about that." The court entered a confirming order on December 19, 2014, from which plaintiff appealed under A-2495-14.

## II.

### A.

We begin our analysis by reviewing in the context of medical malpractice cases some of the basic provisions of the AOM statute, N.J.S.A. 2A:53A-26 to -29, and the interplay between the statute's procedural requirements and those of motions generally. We start with the statute.

In enacting the AOM statute, "the Legislature aimed to strike 'a fair balance between preserving a person's right to sue and controlling nuisance suits [against certain licensed

professionals] that drive up the cost of doing business in New Jersey.'" Hill Intern., Inc. v. Atlantic City Bd. of Educ., 438 N.J. Super. 562 (App. Div. 2014) (quoting Statement of Governor Whitman on Signing S. 1493 (June 29, 1995)), motion for leave to appeal granted, __ N.J. __ (April 21, 2015). The statute strikes that balance, in part, by "impos[ing] a special requirement upon plaintiffs bringing lawsuits claiming malpractice or negligence by certain enumerated professionals." Shamrock Lacrosse, Inc. v. Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, 416 N.J. Super. 1, 14 (App. Div. 2010).

The "professionals" enumerated in the statute include "a physician in the practice of medicine or surgery[,]" N.J.S.A. 2A:53A-26(f), and "a health care facility as defined in section 2 of P.L.1971, c.136 (C.26:2H-2)[,]" N.J.S.A. 2A:53A-26(j). If a plaintiff seeks personal injury, wrongful death, or property damages in an action alleging

> malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than

one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L. 2004, c. 17 (C. 2A:53A-41). In all other cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.[5]

[N.J.S.A. 2A:53A-27.]

---

[5] An affidavit shall not be required . . . if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.

[N.J.S.A. 2A:53A-28.]

A-2072-14T2

Thus, in a medical malpractice action, parties must also comply with the New Jersey Medical Care Access and Responsibility and Patients First Act, N.J.S.A. 2A:53A-37 to - 42. Under that act, the person executing the AOM must be

> licensed as a physician or other health care professional in the United States and meet[] the following criteria:
>
> a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, as the party against whom or on whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the expert witness shall be:
>
> (1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or
>
> (2) a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association who

A-2072-14T2

is board certified in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to either:

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, the active clinical practice of that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(c) both.

b. If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to:

A-2072-14T2

(1) active clinical practice as a general practitioner; or active clinical practice that encompasses the medical condition, or that includes performance of the procedure, that is the basis of the claim or action; or

(2) the instruction of students in an accredited medical school, health professional school, or accredited residency or clinical research program in the same health care profession in which the party against whom or on whose behalf the testimony is licensed; or

(3) both.

c. A court may waive the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association and board certification requirements of this section, upon motion by the party seeking a waiver, if, after the moving party has demonstrated to the satisfaction of the court that a good faith effort has been made to identify an expert in the same specialty or subspecialty, the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine.

[N.J.S.A. 2A:53A-41(a)-(c).]

The Patients First Act makes clear that, with the exception of N.J.S.A. 2A:53A-41(c), "[w]hen a physician is a specialist and the basis of the malpractice action 'involves' the physician's specialty, the challenging expert must practice in

the same specialty." Nicholas v. Mynster, 213 N.J. 463, 481-82

(2013). If the defendant physician

> is board certified and the care or treatment at issue involves that board specialty . . ., the expert witness then must either be credentialed by a hospital to treat the condition at issue, N.J.S.A. 2A:53A-41(a)(1) or be board certified in the same specialty in the year preceding the occurrence that is the basis for the claim or action, N.J.S.A. 2A:53A-41(a)(2).
>
> [Id. at 482 (citation and internal quotation marks omitted).]

A board-certified expert must also satisfy one of two additional requirements. The physician must have devoted a majority of his professional time in the preceding year to either clinical practice in the specialty or to teaching at an accredited medical school in that specialty. Id. at 481.

Our Supreme Court has implemented certain procedural requirements "[t]o ensure that discovery related issues, such as compliance with the [AOM] statute, do not become sideshows to the primary purpose of the civil justice system — to shepherd legitimate claims expeditiously to trial . . . ." Ferreira, supra, 178 N.J. at 154. "A physician defending against a malpractice claim who admits to treating the plaintiff must include in his or her answer the field of medicine in which he or she specialized at that time, if any, and whether his or her

treatment of the plaintiff involved that specialty."  R. 4:5-3;

see also Buck v. Henry, 207 N.J. 377, 396 (2011).

Additionally, the Supreme Court has directed that trial courts conduct a

> case management conference . . . within ninety days of the service of an answer in all malpractice actions . . . .  At the conference, the court will address all discovery issues, including whether an affidavit of merit has been served on defendant.  If an affidavit has been served, defendant will be required to advise the court whether he has any objections to the adequacy of the affidavit.  If there is any deficiency in the affidavit, plaintiff will have to the end of the 120-day time period to conform the affidavit to the statutory requirements.  If no affidavit has been served, the court will remind the parties of their obligations under the statute and case law.
>
> [Ferreira, supra, 178 N.J. at 154-55.]

It serves no purpose to conduct a Ferreira conference more than 120 days after defendant has filed an answer.

> The Ferreira conference was created to remind parties of their statutory obligations and thus avoid dismissal of meritorious claims through inadvertence.  It was never intended, nor could it have been, as an overlay on the statue that would effectively extend the legislatively prescribed filing period.  Thus, it is not a tolling device.
>
> [Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 419 (2010).]

In addition to procedural requirements concerning the AOM statute, a medical malpractice defendant filing an AOM dismissal motion must meet the procedural requirements concerning general motion practice, which are contained in Rule 1:6. This is because "[a]n application to the court for an order shall be by motion, or in special cases, by order to show cause." R. 1:6-2(a).

If the facts upon which the motion is based do not appear of record and are not judicially noticeable, "the court may hear [the motion] on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify and which may have annexed thereto certified copies of all papers or parts thereof referred to therein." R. 1:6-6. Further, "[t]he court may direct the affiant to submit to cross-examination, or hear the matter wholly or partly on oral testimony or depositions." R. 1:6-6.

It bears emphasizing that "[a]ffidavits by attorneys of facts not based on their personal knowledge but related to them by and within the primary knowledge of their clients constitute objectionable hearsay." Pressler & Verniero, Current N.J. Court Rules, comment on R. 1:6-6 (2015). "It is also clear that the mere appending of relevant documents to the motion brief does not constitute compliance with the rule. Such documents must be

incorporated by reference in an appropriate affidavit or certification, which properly authenticates material which is otherwise admissible." Ibid.

This case serves as an example of what can happen when lawyers and judges ignore Rule 1:6-6. We thus turn to the issues the parties have raised on this appeal.

B.

Because the facts are undisputed, our review is of the trial court's legal conclusions and is therefore plenary. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We first review de novo the order dismissing the complaint against Dr. Shah.

The doctor now concedes that the trial court entered the dismissal order based on false information; namely, that Dr. Shah was board certified in geriatric medicine when he treated the patient. The doctor does not explain how the false representations upon which the court made its ruling came about. What is clear is that Dr. Shah established the factual premises upon which the trial court decided his motion through his attorney's certification, which included facts not based on personal knowledge as required by Rule 1:6-6. Notwithstanding that fundamental deficiency in Dr. Shah's motion, the court relied upon the certification rather than dismiss the motion.

The result is that considerable time and expense have been wasted and an action has been dismissed based on incompetent evidence that is false. The court's decision must be reversed.

Dr. Shah contends that even though the court's ruling was based on false evidence, we should affirm the implementing order because Dr. Shah specialized in geriatric medicine, his treatment of the patient involved geriatric medicine, and Dr. Mehlman, who signed the AOM for plaintiff, did not specialize in geriatric medicine. The doctor's argument is without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

Dr. Shah maintains that his answer placed plaintiff on notice of his area of specialty. That may be so, but absent the misrepresentation concerning his board certification plaintiff may well have sought — and received — competent proof or verification that such was the case and responded timely and appropriately.

More significantly, Dr. Shah would now have us disregard R. 1:6-6 and base a decision on the same incompetent evidence that he presented to the trial court. In view of the false statements that were made to the trial court, we have no confidence in either the statements in Dr. Shah's answer or the representations of Dr. Shah's attorney. That is not to suggest

that we believe the doctor's attorney made deliberately false statements. Rather, our comments are made to underscore what should be obvious: <u>Rule</u> 1:6-6 and its implicit prohibition — explicit in the rule's comments - against attorneys filing certifications not based on firsthand knowledge serve a salient purpose. Attorneys should comply with the rule and trial courts should enforce it.

Having said that, we nonetheless must consider the policy underpinning the AOM statute. Dr. Shah should not have to defend a meritless claim.

"Absent extraordinary circumstances, a failure to comply with the statute . . . requires a dismissal . . . with prejudice." <u>Allen J. Cornblatt, P.A. v. Barrow</u>, 153 <u>N.J.</u> 218, 247 (1998). Here, plaintiff did not comply with the statute. We conclude, however, that the circumstances of this case are extraordinary. Specifically, we conclude that in cases where an answer states falsely that a medical malpractice defendant is board certified; the defense attorney does not correct the misstatement, but repeats it in a certification in support of a motion to dismiss the complaint and then repeats the false statement throughout the motion brief; the court does not timely conduct a <u>Ferreira</u> conference; and the court ultimately dismisses the complaint based on the misrepresentation;

extraordinary circumstances exist and the statutory time frame should be adjusted accordingly.

Here, Dr. Shah never amended his answer to correct the misstatement. Accordingly, we remand this matter and direct that he file an amended answer within fifteen days of this opinion. If he fails to do so, he will be deemed to have waived the AOM requirement. Plaintiff shall have sixty days from the date the amended answer is filed, extendable to 120 days on good cause, to file an AOM. The trial court shall timely conduct a Ferreira conference no later than ninety days after the amended answer is filed unless defendants first notify the court they do not dispute that the AOM complies with the statutory requirements. This result serves the policy underlying the AOM statute and preserves the procedural safeguards our Supreme Court has established to prevent the type of "sideshow" that occurred here due to a pleading's misstatement and the disregard of the rules concerning basic motion practice.

C.

We turn to the LSM defendants. We begin by noting that their motion to dismiss suffers from the same deficiency as that of Dr. Shah, namely, it is based in part on a certification from counsel rather than from officers or employees of LSM with firsthand knowledge of the material facts. That deficiency

continues in their appellate brief, where they assert that Dr. Shah "is a practicing geriatric medicine physician, as well as the Medical Director at Crane's Mill" without citing to the appellate appendix or transcript as required by R. 2:6-2(a)(4).

In any event, on appeal the LSM defendants argue that because Dr. Mehlman "is clearly an emergency medicine expert," and because Dr. Shah, the director of the facility, "is a practicing geriatric physician," Dr. Mehlman is not equivalently credentialed and therefore his AOM is inadequate. As we have previously noted, there was no competent evidence before the trial court to establish the underlying "facts" upon which Dr. Shah and the LSM defendants based their motion. Moreover, the trial court did not specifically address each count — and liability theory — of the complaint.

We add the following concerning the LSM defendants. If, on remand, these defendants move to dismiss the complaint - on a competent record - the court should address each count of the complaint before dismissing the case in its entirety. In doing so, the court should bear in mind

> [i]t is not the label placed on the action that is pivotal but the nature of the legal injury. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's

> underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies.
>
> [Couri v. Gardner, 173 N.J. 328, 340 (2002).]

Additionally, the court should consider that an AOM is not necessary to support a claim against a firm whose employee or agent acted negligently if the claim against the firm is solely based on a theory of vicarious liability or agency. Hill Intern., Inc., supra, 438 N.J. Super. at 592-93. In such a situation, however, the plaintiff would need to serve an AOM from an expert with credentials equivalent to the employee or agent who deviated from an applicable professional standard of care. Ibid.

On the other hand, if plaintiff intends to pursue a negligence claim other than one based on the medical malpractice of the LSM agents and employees, then plaintiff will have to provide an AOM from an appropriate professional. If the precise credentials of the appropriate professional are uncertain, either because plaintiff's liability theory is vaguely pleaded or because defendants have not specified the credentials of the appropriate professional or both, then the court should resolve the issues at the Ferreira conference.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION