**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1610-24

BANANA KING CORPORATION,
BANANA KING FRANCHISING LLC
and ARLES VEGA,

 Plaintiffs-Appellants/
 Cross-Respondents,

v.

ELIECER MONTOYA, BANANA
KING BRANDS LLC, BANANA KING
DISTRIBUTORS LLC, BANANAKING
SECAUCUS LLC, and AMERICAN
TRADING GROUP LLC,

 Defendants-Respondents/
 Cross-Appellants.

_____

Submitted January 6, 2026 – Decided February 10, 2026

Before Judges Sumners and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. C-000085-22.

Bedi Rindosh, attorneys for appellants/cross-respondents (Jason A. Rindosh, on the briefs).

Ramon M. Gonzalez, attorney for respondents/cross-appellants (Christina A. Vergara and Ramon M. Gonzalez, on the brief).

PER CURIAM

Plaintiff Arles Vega and his associated entities, Banana King Corporation, and Banana King Franchising LLC, appeal several motions related to the enforcement of a settlement agreement reached in 2024 with defendant Eliecer Montoya and his associated entities, Banana King Brands LLC, Banana King Distributors LLC, Bananaking Secaucus LLC, and American Trading Group. Montoya cross-appeals the denial of his request for attorney's fees. Having reviewed the parties' arguments and the applicable law, we vacate and remand for further proceedings.

I

Vega and Montoya both own and operate Latin-inspired fast-food restaurants in New Jersey. Vega founded the Banana King restaurant concept around 1990 and registered the trademark "Banana King 'World's Greatest Shakes'" in 2003. Montoya helped Vega expand and franchise the restaurant, eventually owning and operating several franchised Banana Kings restaurants.

Eventually, the parties' acrimonious disputes led to lawsuits, which we need not recount. Relevant to the issues before us, the parties reached a February 22, 2024 settlement agreement arising from plaintiffs' August 2022 lawsuit,

2                                                                 A-1610-24

alleging, in part, the willful breach of a prior settlement agreement.[1]   The settlement agreement amended and superseded the earlier agreement, providing in relevant part:

> 1.   Montoya shall relinquish all ownership rights in Banana King Franchising LLC and Banana King Brands LLC.  Montoya consents to the dissolution of . . . Banana King Franchising LLC and Banana King Brands LLC . . . .
>
> 2.   Montoya shall relinquish all rights he has in the trademark "Banana King 'World's Greatest Shakes'" . . . to . . .Vega, personally.
>
> 3.  Montoya will cease and desist any and all use of the Banana King trademark as soon as practicable, not to exceed six (6) months, beginning March 1, 2024 [ending September 1, 2024] . . . .  In order to effectuate this transition, Mont[o]ya shall act in good faith to change all signages, social media accounts, logos, and branding of Banana King.  Montoya shall continue to operate as he has conducted business as Banana King during the six (6) month transition period.
>
> 4.  Vega agrees to pay Montoya a total of $50,000.00 to be paid as follows:  Vega will pay Montoya $25,000.00 within . . . thirty days of this Agreement and the remaining balance of $25,000.00 shall be paid upon Montoya's full transition aforesaid.
>
> 5.   Montoya shall transfer all Banana King and bananaking.com social media accounts and any domain names related to Banana King to Vega and the subject

---

[1]  Plaintiffs obtained a temporary restraining order and a preliminary injunction restraining defendants from using or referring to the words "Banana King" "in any product made, supplied, or distributed by [d]efendants."

A-1610-24

litigation within the same . . . six . . . month transition period aforesaid.

6.    Montoya and any entity controlled by him acknowledge and agree that they are prohibited from using [the Banana King trademark], or any other intellectual property of Banana King.

On June 25, 2024, plaintiffs' counsel sent a cease-and-desist letter to defendants.  The letter acknowledged that while defendants had a six-month transition period under the settlement agreement, "[defendants] agreed to act in good faith to change all signages, social media accounts, logos, and branding of Banana King[,] . . . [and to] cease and desist any and all use of the Banana King trademark as soon as practicable."  The letter, which included extensive screenshots of defendants' use of the Banana King trademark on websites and third-party food delivery platforms, alleged that, post-settlement, defendants created "a new brand under the name 'It'sWaao'" with a public website, which "combi[ned] . . . the 'It'sWaao' brand with the Banana King brand in marketing on the website and elsewhere, causing confusion and direct infringement of Banana King's intellectual property rights."  In June and July, defendants maintained they did not breach the agreement and that Vega had failed to pay the initial $25,000 to Montoya.  Plaintiffs later provided proof that the check for the first payment was dated June 5, 2024, and cashed by defendants on June 13, 2024, well after the required thirty-day deadline in the 2024 agreement.

A-1610-24

On September 3, after the six-month transition period, plaintiffs sent another cease-and-desist letter alleging violation of the settlement agreement due to defendants' "[c]ontinued use of [the] Banana King name, logo, menu and branding" on defendant-operated website www.BananaKing.us, online ordering systems, and third-party food delivery platforms such as UberEats and Grubhub. Plaintiffs also alleged continued use of the "Banana King logo and menu" at defendants' restaurant in Secaucus.

In response, defendants moved to enforce the 2024 agreement on September 9. Defendants alleged that plaintiffs breached the settlement agreement by making late payment of the initial $25,000 and again by failing to remit the second payment since Montoya had "fully transitioned" away from using Banana King. Montoya certified that he "had undertaken the removal of all Banana King signs in front of all of [his] stores" and that as of September 9 "[t]he only store . . . [he] ha[d] yet been able to change the sign for . . . [was] the store in Secaucus." He further alleged the delay was because he was waiting for city approval to change the sign.

Plaintiffs opposed the motion and cross-moved to enforce the settlement agreement providing evidence of defendants' ongoing trademark infringement. Vega certified that Montoya's certification was "simply . . . not true" because Montoya had not removed Banana King signage from other stores besides

5

Secaucus and attached photographs, taken after Montoya's certification, depicting several of defendants' store fronts with signage displaying the Banana King trademark.

On November 14, defendants' counsel submitted a letter to the court as the first and only reply to plaintiff's cross-motion. Counsel alleged that "[t]o date, [d]efendants have full[y] complied with the terms of the [2024] settlement agreement" and that "[p]laintiffs' [c]ross-[m]otion . . . which includes photographs of various locations and internet/social media accounts against [d]efendants in attempt to argue 'non-compliance' are now . . . not . . . current[,]" and therefore plaintiffs' motion was moot.

The motion court issued two orders on November 18:  (1) granting defendants' motion and compelled payment of the remaining $25,000 settlement payment by December 9; and (2) denying plaintiffs' cross-motion as moot.  In a two-paragraph statement of reasons attached to the order, the court explained that while both parties had "obligations that [had] either been recently satisfied or remain to be satisfied" plaintiff's requested relief was "rendered moot as a result of correspondence received from the [d]efendant's attorney indicating that 'the [d]efendant's have full[y] complied with the terms of the settlement agreement." The court denied attorney's fees to both parties because "they both . . . breached their responsibilities under the terms of the settlement agreement."

A-1610-24

Plaintiffs moved for reconsideration of both orders on December 9, alleging defendants' continued use of the Banana King trademark since the November 18 orders on "the profiles for [defendants'] ItsWaao restaurant locations," and on third-party food delivery platforms like UberEats and DoorDash—submitting screenshots as proof. Plaintiffs also submitted more photographs allegedly taken on December 5, depicting defendants' use of the Banana King trademark at three ItsWaao restaurants. Defendants opposed and cross-moved seeking reversal of the denial of attorney's fees.

On January 13, 2025, the reconsideration court, different than the motion court, entered an order denying plaintiff's reconsideration motion. In its statement of reasons attached to the order, the reconsideration court stated it deferred to the motion court's factual findings because they were not arbitrary, capricious, or unreasonable. The reconsideration court also entered an order denying defendants' cross-motion for attorney's fees but found plaintiffs breached the settlement agreement because "[t]here is no dispute that the final payment [of $25,000] was not made."

Both parties appealed the orders by motion court and reconsideration court.

A-1610-24

## II

We review motions to enforce settlements "de novo and consider[] whether the 'available competent evidence considered in a light most favorable to the non-moving party, is insufficient to permit the judge . . . to resolve the disputed factual issues in favor of the non-moving party.'" Gold Tree Spa, Inc., v. PD Nail Corp., 475 N.J. Super. 240, 245 (App. Div. 2023) (quoting Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474–75 (App. Div. 1997)).  Trial court's denials of motions for reconsideration are reviewed under the abuse of discretion standard.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).  Abuse of discretion occurs when the trial court makes its decision "'without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'"  Kornbleuth v. Westover, 241 N.J. 289, 300–01 (2020) (alterations in original) (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).

Before us, plaintiffs contend that the motion court erred in entering the orders denying his cross-motion to enforce the settlement agreement and granting defendants' motion to compel the final payment.  Specifically, plaintiffs argue that defense counsel's November 14 letter replying to plaintiffs' September 19 cross-motion was neither timely filed under Rule 1:6-3 nor competent

evidence under Rule 1:6-6 to consider in deciding the motion. We agree and reverse.

Defense counsel's November 14 submission did not comply with our court rules. Rule 1:6-2(a) states that "[i]f the motion or response thereto relies on facts not of record or not subject of judicial notice, it shall be supported by affidavit made in compliance with [Rule] 1:6-6." Rule 1:6-6 states that

> If a motion is based on facts not appearing of record, or not judicially noticeable, the court may hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify and which may have annexed thereto certified copies of all papers or parts thereof referred to therein.

In Celino v. General Acc. Ins., we disapproved of the defendant's attaching documentary evidence without a certification attesting to authenticity; noting that Rule 1:6-6's requirements are not "merely formal" but rather "go to the heart of procedural due process." 211 N.J. Super. 538, 544 (App. Div. 1986). In Mazur v. Crane's Mill Nursing Home, we stressed the pitfalls of what occurs "when lawyers and judges ignore Rule 1:6-6" and reversed the trial court's order because it relied on the defense attorney's certification that was not based on personal knowledge and contained false statements. 441 N.J. Super. 168, 180-84 (App. Div. 2015).

A-1610-24

The problems we cited in <u>Celino</u> and <u>Mazur</u> mirror our concerns here. Counsel stated defendants had "relinquish[ed] all rights to 'Banana King,'" removed all Banana King signage "at all locations owned by [d]efendants . . . including the Secaucus, NJ location," and removed "'Banana King' from all internet and social media accounts." He further alleged that the photographs included in plaintiffs' cross-motion were not current as of the date of the letter and because those issues had subsequently been addressed, plaintiff's cross-motion was moot. However, counsel's submission was not in the form of an affidavit or a certification; he did not allege facts based on his personal knowledge. There was no indication that these facts were confirmed by the motion record, nor could the court have taken judicial notice of them.

Consequently, the motion court erred in denying plaintiff's cross-motion as moot on "correspondence received from the [d]efendants' [counsel] indicating that 'the [d]efendants ha[d] full[y] complied with the terms of the [2024] agreement." In addition, the motion court erred in relying on counsel's allegations that "[d]efendants ha[d] met their obligations" to order plaintiffs to pay the $25,000 settlement balance to defendants.

Given our conclusion that the motion court should not have considered defense counsel's letter, the remaining record before the court reveals disputed material facts that preclude resolution of parties' respective motions. Montoya's

10

certification in support of defendants' motion to compel claimed that he complied with all the settlement agreement terms within his control. However, Vega's certification supporting plaintiffs' cross-motion claimed that Montoya had not fully complied with the settlement agreement and could have easily done so within the time deadline set forth in the settlement agreement. Accordingly, we are constrained to reverse the motion court's orders and remand for fact finding to resolve whether the settlement agreement was breached and whether any party is entitled to attorney's fees.

Because we conclude the motion court erred in considering defense counsel's letter to issue the orders being appealed, the reconsideration court's orders upholding the motion court's orders therefore rested on an "impermissible basis" constituting an abuse of discretion. Kornbleuth, 241 N.J. at 301 (omitting internal citations).

Finally, we note that it is unnecessary to address plaintiff's contention that defense counsel's letter was untimely under Rule 1:6-3(a) because a remand is necessary; the motion court should not have considered defense counsel's letter, and the court must make factual findings as to whether the settlement agreement was breached.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1610-24